And we will turn to the second case for this morning, Schaefer v. Walker Bros. Enterprises. Mr. Sapolsky. Good morning. May it please the court, my name is Jamie Sapolsky. I'm representing the named plaintiff Robert Schaefer and the certified class of tipped employees. The two claims before the case, before the court today, both the non-tipped duties claim and the failure to inform are issues of first impression before this court. But although the court in Driver v. Apple, Illinois, acknowledged that tipped employees who are required to perform unrelated non-tipped duties, as for example a restaurant server who is required to prepare food, must be paid a full minimum wage for that time. And the servers here were required to prepare food. So it would help me for us to be very precise as we discuss this case about what these people are doing. So they're doing some work that's legitimately subject to the tipped wage rate, so to speak, the lower rate that takes into account the fact that there are tips. So they're serving tables and so on. They're doing some work, I take it, that is considered related to their service at the tables or to their tipped work. And that work, as I understand the Department of Labor regulations, can be up to 20% of their day and still yield the tipped wage. And your allegation is that they're also doing some work that's entirely unrelated to the tipped work. Whether it's chopping up lettuce or preparing great big bins of strawberries or whatever they're doing. And that work, I take it, isn't subject to the 20% limit. You're not supposed to do any unrelated work. Or if you do, you've got to prorate somehow. You've got to say, well, 5% of your work is unrelated, so 5% gets paid at the minimum wage or whatever the non-tipped wage is. Is that a fair summary? Yes, it is, Your Honor. And the district court found that the servers were performing this work, some of which you've mentioned, chopping vegetables. So some of it you contend was flat-out unrelated to the tipped part of their job. That's correct, Your Honor. And, as I say, the court found that there's no real dispute about the kinds of duties that were occurring. It's a question of how to characterize it. And the court found that these duties were occurring and, in fact, found that the testimony of Robert Schaeffer in his deposition was consistent with the types of duties that the server declarations that the defendants produced during the course of litigation, those were consistent. So the court's finding that these duties are occurring with regularity. The court uses the term regularly. And yet, when the court, having found those duties, then the decision does an about-face and the court starts to look at the duties that the servers did not perform and citing to the driver case. So the court begins to say, well, they're not doing things like mopping floors or washing dishes or cleaning bathrooms. But the tipped work that the servers did perform and the types of works, the duties that they were doing, the defendant cannot evade liability for the types of unrelated non-tipped duties that the servers did perform. So I agree with that. It's a very broad, I don't think the district court would have disagreed with that. It's a broad statement unless the district court was confusing the rules for related side work and unrelated. But I wonder what you think the test is. Rather than just listing job after job, what's the test that separates out what makes something unrelated from what makes something related and thus subject to the 20%? That's an important point because it's not covered by the district court, neither is it covered by the defendants either below or in the briefing in this court. The first step in making that analysis is the question of what is tipped work? What is tip-producing work? And I think that that's a pretty easy characterization to make, and that is, is somebody serving food, taking orders, serving drinks, filling customer needs? And the courts have generally said that that requires that there is some customer interaction between the server and the customer. There are courts that take it a step further, and this brings in tipped employees like Busboys or Barbacks, where there's no direct interaction between the customers and the individual, the employee. The Busboy only shares in the tips. I'm sorry, Your Honor? The Busboy only shares in the tips. The Busboy does share in the tips in this case. Does he receive a tip? Yes. And the courts have said that that's okay because the Busboys are in the dining room, the customers see the Busboys, and so the thinking is that part of the tip is going to the people in the dining room, including a Barback or a Busboy. So that seems to be pretty easy. The next question is what is the unrelated non-tip duties? And that's everything else, Your Honor, except what could be characterized as related. And how is it characterized? Right, and that's what I'm trying to drill down into. And how is it characterized as related? It's related if it occurs incidental to customer service. All right, so I'm going to read off a few things that are in this record. Okay, stirring Cointreau into sour cream, related or not related? That is unrelated, Judge. How about filling an ice bucket to cool the salsa? That is unrelated, Judge. Okay. Stirring blueberries or lingonberries into the pre-made compote? That is unrelated. Okay, and so you feel pretty confident about all this. So let me suggest a different definition, which might advance the ball or might not. The different definition would be whether the employer actually hires people to do the unrelated job who have no contact with customers. So does the employer hire food preparation sous chefs, or does the employer hire people who prepare food stocks that are going to be used throughout the day and put them in a convenient container so that if a customer orders a waffle with blueberries on top of it, they can just scoop the blueberries out of the compote and throw it on? So I would like, anyway, some objective definition, since as your case suggests there are economic consequences to the way this gets done. Your Honor, I think that's a good starting point, but it only gets us so far because the question then becomes, do restaurants have line cooks and prep cooks who are doing this kind of work? Absolutely. Stirring the contral in and all those kinds of duties that you just identified. These are all on the record, by the way. People are testifying that these are done by them. Yes, but the point is if the employer is using the tipped employees to do this non-tipped work, it relieves the employer of the need to have somebody paid at least a minimum wage to do the work. So while it is a starting point, and certainly they did have cooks and line cooks, I'm sure, that were doing similar types of work, it only gets us so far. And then the other point to make is that when you turn to, there are duties that can be done that are non-tipped, unrelated duties, that if they occur in the course of customer service, could shift to a related duty that would be covered by the 20% DOL rule. So, for example, we used the case in one of the briefs on, Walker Brothers has a German pancake and it's served with slices of lemon. And in the event that a customer orders the German pancakes and there are no lemons, then the server has to fill that order. The server slices one lemon, includes it with the order. That would otherwise be an unrelated non-tipped duty, but it occurs because the server has to fill the order, and I'll add with some haste that it can't be a situation that is engineered by a manager to ensure that the server has to do that work. Or that the manager would say to the server, okay, well you sliced one lemon, go in the back of the house and now slice the two crates that we have sitting there. Right. No, I understood that that was your distinction. So the server can put a blob of ice cream on top of the waffle as part of serving it, because you can't really do that in advance or melt everywhere. But the server can't be told, you know, go wipe off the burners in the kitchen for the next 20 minutes. That's correct, Judge. And back to what the district court, there's kind of a gap in the court's analysis, because the court does say that these duties that you've identified, that we've identified in the brief, are incidental to tip work, and they just simply are not. They're not related because they don't occur in the course of the server's duties with the interaction with the customer. I mean, what I'm trying to, I would assume that most employers would, at least my opening assumption is most employers would like to comply with the law, and they need to know what the rules are. And it's unfortunate when the rules are fuzzy enough that, you know, slicing one lemon is okay to put in the tipped thing, but slicing two crates of lemons is not. Maybe that's easy enough to see. Restocking juice glasses, filling and changing salad dressing containers, you know, well, what if the salad dressing isn't there in the table or the ketchup is too low, and so you need to go fill up the ketchup container. I mean, it strikes me that there's a lot of gray area here that needs to be avoided. Your Honor, I agree, and certainly if you read some of the Department of Labor opinion letters, those are frankly all over the place. They don't apprise an employer of sufficient guidance. But with respect to the things that you're talking about that are sort of in the middle, the Department of Labor extended a huge benefit to the employers of tipped employees by providing this 20% cushion. And so the things that you're talking about, it's pretty clear that if somebody's back there chopping fruit or vegetables or whatever, that that's got to be paid at minimum wage. The gray areas is the 20%. And, you know, we've had cases against some outfits like Applebee's and all, and since then they've gone to this rule that they say you can only do 18% of your time can be spent doing this non-tipped work, and it's got to be related. And so there is ways that employers have been able to effectuate the requirements without undue ambiguity. There's no further questions. Thank you. All right. Thank you. Who's Riley? Good morning. May it please the Court, my name is Jennifer Riley, and I represent defendants, Walker Brothers Restaurants. The district court in this case correctly concluded that plaintiff Robert Schaefer failed to demonstrate that he performed work unrelated to or outside the scope of his tipped occupation. I'm not sure the district court focused enough on the actual jobs, because I think it got distracted by the 20% safe harbor for the related activities, and there are quite a few things in the record that I think rationally could be characterized as not related, whether it's warming the soup in the kitchen, or whether it's filling the ice bucket, restocking the bread bins, brewing the iced tea and coffee, starting the soup warmer, bringing out bread, mushroom sauce, and blueberry compote, wiping off the burners, restocking the refrigerator with various things, cleaning shelves. There are a lot of activities, and if it's unrelated, the 20% safe harbor doesn't apply. That's what concerns me. I don't know whether it's 5% of their time, 10% of their time. It's less than 20. Everybody seems to agree. But I'm not sure that there was a clear test and clear fact-finding applying that test here. Your Honor, I'm going to respectfully disagree. Let me start with the Department of Labor regulations and guidance. The Department of Labor has recognized that servers can spend part of their time performing tasks related to their occupation. Related, that's right. We all agree with that, of course. Excuse me, Your Honor. The examples, however, are performing preparatory or closing activities, cleaning and setting tables, toasting bread, making coffee, engaging in after-hours cleanup, the same types of examples that Your Honor is listing. Well, there's a 1985 opinion letter that says preparing vegetables for the salad bar is not a related duty, even though the customers go up to the salad bar, presumably, and help themselves. And I'm not sure why wiping off the burners is related. I'm not sure why cleaning the shelves is related. That's not a table. Wiping off a table probably is related. But cleaning the shelves, dusting picture frames? Your Honor, it's related because it affects the customer's experience in the restaurant. Well, then everything is related. So does the kitchen. What the chef does affects the customer's experience in the restaurant. But you're referring to things in the dining room, such as dusting the picture frames. Dusting the picture frames? Oh, really? I can't believe that you think that's related to tipped duties. Well, if people in the room— It has nothing to do with tipped duties. Your Honor, I think the evidence about dusting is, in fact, very limited, and I don't think that there's—the record contains a lot of evidence that servers were regularly dusting. Well, in Zelman's declaration, wiping down woodwork or dusting picture frames occurs. Occurred, I suppose, by that one individual. And if I go into a restaurant as a customer and I'm sitting next to a dusty picture frame, I think that will impact my experience. But that's not a tip. You don't tip people because the picture frames are dusty or not. What about slicing fruit, cutting broccoli, slicing strawberries and lemons, preparing strawberries, mushrooms, and broccoli? Your Honor, the district court here recognized the two-part task set forth in the Department of Labor handbook, and that is, are the duties incidental to the regular duties of the server, and are they generally assigned to servers? And based on the undisputed record here, the court found both of those criteria met. But you're saying the record's undisputed, and I'm questioning whether that's true. I don't think there's enough in this record to resolve the case against you, but I'm not at all clear that there's enough to resolve it for you. Well, Your Honor, there's no evidence in this record that—let's take slicing lemons or strawberries. There's no evidence in this record that servers were doing those things for any other reason other than to serve them to customers. The record is undisputed. Why would you serve—why would you cut up any lemons in your kitchen other than to serve them to customers ultimately? Well, Your Honor, respectfully, there's no evidence that any of this stuff was going on in the kitchen. It's being performed on the server aisle so that if a customer requests— Cutting the broccoli is being done in the server aisle? Yeah, it's on the server aisle. So that if a customer requests something like a lemon or a strawberry to go with a pancake, they're readily available to servers to grab and deliver to the customer quickly and efficiently. The record's also undisputed that having these items prepared and ready on the server aisle made customer service faster, more efficient, and thereby enhanced service. Well, of course, but having a chef in the kitchen does, too. I mean, we've said that food preparation is an unrelated duty. You said that in the driver case. Your Honor, actually, in the driver case, the court provided a list of duties that were non-tipped. The court did not go on and find any particular duty unrelated. There was no record in that case for the court to make such a determination. I think you're overstating the record. I really do. I think that there are a lot of these things that are certainly not serving a table, and they're not the obvious things like putting the scoop of ice cream on the waffle, which is certainly a related—you know, it's kind of putting the plate together, but it's something that you could rationally ask a server to do. I'm not sure about this, you know, putting the Cointreau into—it sounds awful, actually, but putting the Cointreau into sour cream or whatever mixing sour cream is, those maybe have something to do with serving customers. I don't know. But if you're making this so broad that it's everything that's going to enable the restaurant to operate efficiently, you're way too broad for me. Your Honor, I think it's—first of all, I think it's the plaintiff's burden to demonstrate that servers were performing some unrelated duties here. So I think the record is lacking in that respect. But no, you're saying that anything that makes the restaurant operate more efficiently ought to be treated as a related duty for the servers, and you should be able to pay the tipped wage for that. And I'm saying that I don't see that test in the Department of Labor regulations. I don't see that test in decisions of other courts, and I certainly don't see that test in this Court's decisions. No, Your Honor, respectfully, I'm not saying that anything that makes the restaurant operate more efficiently is tipped. I'm saying that things that make customer service more efficient and better and lead to greater tips are tipped. So suppose you hire two chefs instead of one because it's going to mean that the food is cooked faster and customers will be happier. Do you pay the second chef at the tipped wage rate? Of course not, Your Honor, because it's still the servers who are delivering that food to the customer. Right, so in other words, the test that you just said doesn't work either because that would be a step designed to improve customer service but not something that leads to the tipped wage. Respectfully, again, Your Honor, it doesn't matter if there's twice as much food sitting there. If there's not a server to take it out to the customer because that server is busy stirring or cutting or something that isn't prepared ahead of time that the server needs to do, then that food isn't getting to the customer more quickly or efficiently. Right, I was going from the other point of view and saying that if the restaurant has had a reputation for slow service of tables and they realize, you know, we have more tables than one chef can handle, so let's have two chefs. You're not going to pay the tipped wage to the second chef. You're just going to get the food out to the tables more efficiently. What's wrong with the test that I suggested that unrelated duties are those that the restaurant hires minimum wage or, you know, non-tipped people to perform? Certainly, Your Honor, I think that's... Other courts have adopted that test. Other courts have adopted that test based on the plain language of the FLSA and the regulation itself as though, excuse me, if the side work is part of the server occupation, then the server can obviously do that side work without infringing upon any other occupation in the restaurant. Right, and so that isn't the test the district court used here. So why don't we need the district court to revisit this with a more careful distinction of what's related and what isn't related? Well, I think the district court here gave the plaintiff the benefit of going a step further and even looking further into the field operations handbook, which several courts have found that it didn't even need to do based on the plain language of the regulation. What about your notice? That's the other side of this case we didn't discuss. You certainly notified the tipped employees that it was possible that they were going to get paid the tipped wage, but nothing in these posters says, and this is what we're doing. Not only do we have the option to do it, but we are actually going to do it. You're right, Your Honor. The poster only set forth what the law was, but in this case there's other evidence that the defendants informed the servers that they intended to avail themselves of the tipped credit. Is that undisputed evidence? Yes, it is, Your Honor. It's undisputed that the defendants circulated their handbook, which explained the tipped credit, and also that they included tip agreements in the hiring packets that explained to each individual that you will be paid a tipped credit wage. Here's the minimum wage, here's your tipped credit, and here's your cash wage. Certainly the handbook and the agreement, well, here's what the agreement, the server uniform and tip agreement says, Employers in Illinois may also apply a tipped credit of 40% of minimum wage against wages paid for tipped employees, period, close quote. It doesn't say, and we're one of the employers who are going to do that. I believe that is what the handbook says, you're right. Well, so it doesn't say what you said it said. It says just this is possible under Illinois law. The tip agreement says, I understand that a portion of the wages I receive are from tips. The company can apply credit to the minimum wage to include those tips as wages. The tipped credit in Illinois is 40%. It also provided an example of how the tipped credit worked. Here's the minimum wage, here's the tipped credit, and here's the hourly wage that you're going to receive. Yeah, well, you're still using the word may. It doesn't say this is, in fact, the numbers were even wrong, weren't they? Not in the tipped credit agreement. In the tipped credit agreement, the numbers were actually correct, and it was specific to Mr. Schaefer. And it said, I understand that a portion of the wages I receive are from tips, meaning Mr. Schaefer is agreeing to that. And then it says that under Illinois law, a company may apply 40% tipped credit, i.e. that it's approved under the law. Yeah, I don't know. It skates right at the edge if it gets over the edge because, you know, the idea is people should know what they're going to get paid so that they can make a rational decision about whether they want the job or not. Right, and, Your Honor, respectfully, I don't know how you can make this more clear. I understand that as an employee, I'm going to receive a portion of my wage. I am going to receive where I may receive. No, it says, I understand that a portion of the wages I receive are from tips. Well, that's a portion, but it doesn't say, and we're going to deduct from the minimum wage to make up for those tips. It does. It goes on to provide that calculation. Here's the minimum wage. Yeah, I remember the calculation. And here's what you're going to receive on an hourly basis. So these people are below the federal poverty line, aren't they? With tips, Your Honor, actually they were making far in excess of minimum wage. The minimum wage actually puts you below the federal poverty line, but anyway, that's not your problem. To make one other point before my time is up, Your Honor, contrary to what the plaintiff did represent earlier, there's not any evidence in this record of what cooks did in this restaurant, either at Walker Brothers or in any other restaurant. The fact that Mr. Schaefer failed to demonstrate what cooks do in this restaurant belies his claim that these servers were somehow performing unrelated duties because they were doing something performed by cooks. Again, there's no evidence in the record as to what cooks did in this case. There's also no evidence that servers were performing work in the kitchen. Mr. Schaefer himself actually conceded that the servers were performing work like cutting strawberries in the server aisle. It seems to me odd that putting a job out into the server aisle transforms it for minimum wage purposes. You could just have an open kitchen. Some restaurants do. Well, Your Honor, I point that out because Mr. Schaefer is relying on a representation that work was done in the kitchen to make it sound more untipped. So you think out in the server aisle he could have just been given a garbage can-sized tub of lettuce and been told to stand there for two hours chopping it, and because it was in the server aisle that would be fine? I know, Your Honor, and there's no evidence in the record. I'm just asking hypothetical. I've just given you a hypothetical. A garbage can-sized tub of lettuce, it's out in the server aisle, and he's told chop all of it up, and he does. It takes him two hours to do it. But he's standing out there in the server aisle the whole time. Well, it would depend on whether chopping that lettuce was incidental to his customer service activity. No, it doesn't. I'm just, well, I don't understand your position at all, actually. You can spend two hours chopping it. Given the Department of Labor's guidance, you can spend two hours chopping up a garbage can-sized tub of lettuce, and you're doing tipped work? Again, Your Honor, there's no evidence. How can that be possible? There's no evidence in the record that servers were doing any crates of vegetables. The undisputed evidence is that servers were spending somewhere between two and 20 minutes on all of their side work together. So you can see that in my hypothetical it doesn't matter that it's in the service aisle. That would clearly be non-tipped work. Well, in that situation, which isn't the situation we have here, I think that it would depend on whether it was incidental to service and generally assigned. It would not be. Sorry, Your Honor. I think it would depend on whether it's incidental to service and generally assigned to the servers. And then if those two factors are met, whether that task fell within an exception, i.e., is it a specific employee who's being called out to do that work, or is it exceeding 20% of the time? In this case, there's no evidence that any specific employee was called out to perform any extra maintenance work. And there's no claim, of course, that related duties were exceeding 20% of the time. Okay. Well, you can wrap up now. Thank you, Judge. I appreciate your time. All right. Thank you. Anything further, Mr. Sapolsky? Just on the issue of the non-tipped duties, Judge, I just wanted to make a point that there was some discussion about the server aisle. And the point is the server aisle is adjacent to the kitchen. It's where the servers receive the meals that are coming on the plates and so forth. And that server aisle, by the testimony of Kevin Donahue, who was the defendant's 30B6 deponent, that is not in the dining room. That's the server aisle where they're doing a lot of their other preparatory work. So the fact that it may not be exactly in the kitchen, it is not in the dining room. On the point of the failure to inform, Your Honor, in addition to whatever else they have identified, the handbook, the acknowledgement, they also claim that they made some oral explanations during the course of the orientation and training, which, of course, Mr. Schaffer says that he did not receive. And I should also add that of the 15 servers whose declarations the defendants provided, five of those 15 also are silent as to whether they received any kind of information during orientation or training. But the point is that what the defendants did provide is insufficient for subsection 3M because as far back as the inception of that requirement that employers notify their tipped employees in 1974, the five points that the DOL is now requiring as of April of 2001 are the same five requirements that were in the subsection in 1974. So the defendants have argued that until April and May of 2011, what they had to tell the tipped employees was unknown. There was no guidance on that. But, in fact, according to the case that we've cited, the National Restaurant Association v. Solis, the 2012 decision, and also Magistrate Judge Brown's decision in the driver case in the following year, the court in Solis does a side-by-side comparison and identifies the fact that subsection 3M and the regulation draws from subsection 3M the same five criteria. So the fact is that employers of tipped employees have the same obligation since the mid-70s that they do presently. So the court has no other questions. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under review.